IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Christine M. Arguello**

Civil Action No. 08-cv-00511-CMA-BNB

JENNIFER SERLES, as wrongful death claimant and surviving spouse of her husband, Timothy Serles, Deceased,

    Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

    Defendant.

**ORDER GRANTING DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment (Doc. # 20).  For the following reasons, the motion is GRANTED.

**INTRODUCTION**

This case requires the Court to interpret the terms of an automobile insurance contract.  Plaintiff Jennifer Serles and her deceased husband, Timothy Serles, were both insured under the same policy with Defendant State Farm Fire and Casualty Company ("State Farm").  After a tragic accident took the life of Mr. Serles, Ms. Serles sought to recover damages for his wrongful death.  Because the responsible driver's insurance was insufficient to cover the claim in full, making the driver an "underinsured" motorist, Ms. Serles turned to State Farm to make up the difference.  State Farm paid

Ms. Serles $80,000; she contends that the insurance policy entitles her to additional compensation. Given this dispute, State Farm filed the present motion for summary judgment asking the Court to determine the extent of its liability. After considering the relevant law and the language of the insurance policy in question, the Court finds that State Farm has satisfied its responsibilities under the policy.

## BACKGROUND

The essential facts of this case are not in dispute. The Serles' insurance policy with State Farm provided, among other things, underinsured motorist ("UIM") coverage with limits of $100,000 per person and $300,000 per accident. (Doc. # 20, ¶¶ 3-5.)[1] On May 30, 2004, Mr. and Ms. Serles were riding their motorcycle near Taos, New Mexico, when they were involved in an accident. (*Id.,* ¶ 1.) Both were seriously hurt, and Mr. Serles later died as a result of his injuries. (*Id.,* ¶ 2; Doc. # 2, ¶ 14.)

Ms. Serles asserted a wrongful death claim for the death of her husband, along with claims for her own injuries, against the driver of the car that caused the accident. (Doc. # 33, Ex. 1.) That driver had an insurance policy with liability limits of $30,000 per person and $60,000 per incident. (*Id.* at 2.) In an effort to settle all claims with the Serles' and two others injured in the accident, the responsible driver's insurer paid Ms. Serles, individually, $5,000 for her injuries, and also paid Ms. Serles, as personal

---

[1] In general, UIM coverage is intended to provide compensation to a person injured by a motorist with insufficient insurance coverage by allowing the injured person to recover benefits to the same extent as if the responsible motorist had been insured, up to the injured person's UIM policy limits. *See* Peter H. Doherty, *Recent Developments in the Law of Uninsured and Underinsured Motorist Coverage*, 22 Colo. Law. 2273 (Oct. 1993).

representative of her deceased husband, $20,000 for his wrongful death. (*Id.*; Doc. # 20, Ex. A-7.) The remaining $35,000 of the policy limit was paid to the others injured in the accident. (Doc. # 20, Ex. 1.) The $20,000 settlement for Mr. Serles' wrongful death was divided between Ms. Serles and Mr. Serles' two adult children, Dustin and Ryan, pursuant to New Mexico's wrongful death statutes. (Doc. # 20, ¶ 8.) New Mexico law splits the proceeds of a wrongful death action, with one half going to the surviving spouse and the other half going to the surviving children or grandchildren. N.M. Stat. § 41-2-3. As a result, Ms. Serles received $10,000 and Dustin and Ryan each received $5,000. (Doc. # 20, ¶ 8.)

In connection with this settlement, Ms. Serles sought additional compensation from State Farm pursuant to her insurance policy's UIM provisions. State Farm paid Ms. Serles the full policy limit for her personal injury claims, adjusted for the amount she received from the responsible driver's insurer. (Doc. # 2, ¶ 32.) On the claim for Mr. Serles' wrongful death, State Farm paid Ms. Serles a total of $80,000, which it claimed satisfied its obligation to pay UIM benefits. (Doc. # 20, ¶ 9.) More specifically, State Farm contends that it is entitled to offset the policy's $100,000 UIM limit by the full $20,000 paid to Mr. Serles' estate. (*Id.,* ¶ 21.) Ms. Serles, on the other hand, argues that the limit can only be offset by the amount that she personally received, meaning that State Farm is obligated to compensate her a total of $90,000 in UIM coverage – the $100,000 limit less only the $10,000 paid to her directly for the wrongful death settlement. (Doc. # 2, ¶¶ 30-31.) Unable to resolve this dispute, Ms. Serles filed the

present lawsuit seeking the additional $10,000 she believes is due to her under the terms of the insurance policy, and also asserting a claim for bad faith breach of contract against State Farm for willfully and wantonly refusing to pay that additional amount. (*Id.,* ¶¶ 38-58.)

## STANDARD OF REVIEW

The purpose of summary judgment is to determine whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Thus, courts should grant summary judgment if the record indicates that "there is no genuine issue as to any material fact" and that the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Because none of the relevant facts are in dispute, the Court evaluates this summary judgment motion to determine which, if either, party is entitled to judgment as a matter of law on the question of State Farm's liability under the insurance contract.

## ANALYSIS

### I.   LEGAL PRINCIPLES

The parties agree that Colorado law applies to this action. (Doc. # 20, ¶ 14; Doc. # 33, ¶ 10.) In Colorado, the interpretation of an insurance contract is a matter of law. *Union Ins. Co. v. Houtz*, 883 P.2d 1057, 1061 (Colo. 1994). General rules of contract interpretation guide the Court's reading of the terms, and those terms are to be construed to promote the intent of the parties. *Id.* (citations omitted). "The words and phrases in an insurance policy are to be given their plain, everyday meaning, and

strained constructions should be avoided." *DeHerrera v. Am. Fam. Mut. Ins. Co.*, --- P.3d ---, 2009 WL 540789, at *2 (Colo. App. 2009). Unless there is ambiguity in the policy language – meaning that the language is susceptible to more than one reasonable interpretation – the policy is to be enforced as written. *Houtz*, 883 P.2d at 1061. Mere disagreement between the parties over the interpretation of the contract does not create an ambiguity. *Id.*

## II.     INTERPRETATION OF THE INSURANCE CONTRACT

The primary dispute in this case is over the amount State Farm is entitled to offset against the $100,000 UIM policy limit. Ms. Serles acknowledges that State Farm is entitled to deduct the $10,000 that she received from the $20,000 paid to her husband's estate. (Doc. # 2 ¶ 30.) The issue for the Court, then, is whether the policy also permits State Farm to deduct the $10,000 paid to Mr. Serles' children. The Court finds that it does.

The Serles' insurance policy has several relevant provisions. The policy first defines the general scope of UIM coverage:

> We will pay damages for **bodily injury** an **insured** is legally entitled to collect from the owner or driver of an **uninsured motor vehicle**. The **bodily injury** must be sustained by an **insured** and caused by accident [sic] arising out of the operation, maintenance or use of an **uninsured motor vehicle**.

* * *

> ***Uninsured Motor Vehicle*** – means:
>
> \* \* \*
>
> 3. an "underinsured" land motor vehicle, the ownership, maintenance or use of which is insured or bonded for bodily injury liability at the time of the accident, but the limits of liability for ***bodily injury*** under such insurance or bonds are:
>
>    a. less then the limits of this coverage under this policy;
>
> \* \* \*

(Doc. # 20, Ex. A-3, at 14) (emphases in original).[2]  The parties do not dispute that the car that caused the accident fits within this definition of an "uninsured motor vehicle."

The policy also defines who an "insured" is. As relevant to the present case, that definition is as follows:

> ***Insured*** – means the ***person*** or ***persons*** covered by uninsured motor vehicle coverage.
>
> This is:
>
> 1. the first ***person*** named in the declarations;
>
> 2. his or her ***spouse***;
>
> \* \* \*

---

[2] The policy denotes certain defined terms in bold, italicized text. This Order quotes the policy with those emphases included.

>     5. any ***person*** entitled to recover damages because of ***bodily injury*** to an ***insured*** under 1 through 4 above.

(*Id.*)

Finally, the policy outlines the limits of UIM coverage, which include the following "offset" provision:

>     3. The most we will pay under this coverage will be the lesser of:
>
>         a. the difference between the limits of liability of this coverage and the amount paid to the ***insured*** by or for any ***person*** or organization who may be held legally liable for the ***bodily injury***; or
>
>         b. the amount of damages sustained, but not recovered.

(*Id.* at 15.) Thus, under the plain language of the policy, State Farm is permitted to deduct all amounts paid to a person meeting the definition of "insured" from its overall UIM coverage limits.

State Farm's primary contention is that Mr. Serles' children, Dustin and Ryan, fit the definition of an "insured" because, having received the $10,000 as a result of New Mexico's wrongful death statutes, they were "entitled to recover damages because of bodily injury to an insured" – Mr. Serles. (Doc. # 20, ¶ 21.) Ms. Serles disagrees. First, she notes that, under the Colorado Wrongful Death statute, the only person permitted to bring a wrongful death suit within the first year after the death is the surviving spouse. C.R.S. § 13-21-201(1)(a). She contends she asserted the wrongful death claim within that time, making her essentially the owner of the claim. (Doc. # 33 at 5-6, 8.) Second,

she points out that the judgment in a wrongful death action is apportioned pursuant to Colorado's descent and distribution statute. C.R.S. § 13-21-201(2).[3] That statute, in turn, provides that where there are surviving descendants who are not the children of the surviving spouse (as is the case here), the first $100,000 of the estate passes in full to the spouse. *Id.* at § 15-11-102(4). Ms. Serles contends that because she, the surviving spouse, would receive the first $100,000 of the estate, and thus would receive the entirety of the $100,000 UIM policy limit, Dustin and Ryan Serles would not be "entitled" to any damages under the terms of the policy. As Dustin and Ryan Serles could neither institute a wrongful death action nor recover any of the resultant damages pursuant to Colorado law, they cannot, Ms. Serles argues, be considered "insureds" under the policy. (Doc. # 33 at 7-8.)

The problem with this argument, however, is that Dustin and Ryan Serles **did** receive a portion of the wrongful death settlement, and they did so by operation of law. The $10,000 was not given to Dustin and Ryan Serles as a gift or bequest, but rather was distributed as required under New Mexico's wrongful death statutes. *See supra* at 3. In other words, New Mexico law granted Mr. Serles' children a legal right to some of the wrongful death settlement. Under these circumstances, Dustin and Ryan Serles were "entitled" to the portion of the $20,000 they received. *See* Black's Law Dictionary

---

[3] Section 201 of the Wrongful Death statute specifically applies to a little-used class of cases relating to death arising from the operation of cars, locomotives, and the like. C.R.S. § 13-21-201. However, the more common type of wrongful death action outlined in Section 202 (which is the cause of action relevant here) is still governed by the procedural rules outlined in Section 201. *Id.* at § 13-21-203(1)(a).

573 (8th ed. 2004) (defining "entitle" as meaning "[t]o grant a legal right to or qualify for"). As such, Dustin and Ryan Serles meet the definition of an "insured" under the plain, everyday language of the policy.

Given that Mr. Serles' children are "insureds" under the policy, State Farm was entitled to deduct the $10,000 they received from the wrongful death settlement. The policy expressly provides that State Farm is permitted to offset all monies paid to "the insured" by or for anyone legally liable for the injuries to Mr. Serles. (Doc. # 20, Ex. A-3, at 15.) Although the policy uses the term "insured" in the singular, it specifically defines that term to include the plural – "the person or persons" covered by the UIM coverage. (*Id.* at 14.) Thus, the policy contemplates having more than one person meet the definition of "insured." A fair reading of the policy, then, is that State Farm is entitled to offset any money paid to any person or group of persons who is or are an "insured" under the policy. Because the entirety of the $20,000 was paid to persons meeting that definition, State Farm was allowed to deduct that full amount from the $100,000 UIM limit in determining what it owed on the policy.[4]

Ms. Serles suggests that, because Colorado law governs this action, the impact of New Mexico's laws on the distribution of the $20,000 wrongful death settlement is not relevant. (Doc. # 33 at 10.) But the insurance policy does not restrict the definition of

---

[4] Because Mr. Serles' children meet the definition of an "insured" and, therefore, State Farm was entitled to offset the amounts paid to them, the Court does not reach State Farm's alternative argument that, because the entire $20,000 was paid to Mr. Serles' estate, and because Mr. Serles was an insured, the entire $20,000 must be included in the offset regardless of whether Dustin and Ryan Serles are "insureds" under the policy. (Doc. # 20 at 18-22.)

an insured to someone theoretically entitled to damages under the Colorado statutes. Rather, the policy defines an insured as **anyone** entitled to damages as a result of injuries to, *inter alia*, a named insured.  (Doc. # 20, Ex. A-3, at 14.)  As noted above, Dustin and Ryan Serles fit this definition.  Even assuming they would not have had a claim to any part of the $20,000 if Colorado law controlled its division, this Court cannot ignore the fact that they were, in fact, entitled to a portion of those damages under New Mexico law.

Ms. Serles also contends that the Colorado Court of Appeals' decision in *McCord v. Affinity Insurance Group, Inc.*, 13 P.3d 1224 (Colo. App. 2000), another UIM coverage case, compels a ruling in her favor.  (Doc. # 33 at 9-10.)  In *McCord*, the decedent and her daughter were both insured under the same policy; the decedent's other heirs were not.  13 P.3d at 1226, 1228.  The decedent's heirs were paid $50,000 by the responsible parties' insurance carriers, with $20,500 going to the daughter.  *Id.* at 1226.  The court found the decedent's and daughter's insurance company could not use the entire $50,000 to offset its maximum liability, but rather could only deduct the $20,500 paid to the daughter, its insured.  *Id.* at 1229-30.  Ms. Serles contends that in this case, as in *McCord*, the insurer may not offset its liability with payments made to heirs who are not named in the insurance policy.  (Doc. # 33 at 9-10.)  But there is a crucial difference between this case and *McCord*.  In the instant case, Mr. Serles' children are "insureds" under the plain language of the policy, whereas in the *McCord* case, the other heirs undisputably were not.  13 P.3d at 1230 ("The payments made to

the decedent's other heirs . . . were **not** payments to 'any insured' under [the] policy and, thus, may not be used as offsets for determining [the insurance company's] maximum liability . . . .") (emphasis in original).  Offsetting the amounts paid to Dustin and Ryan Serles does not run contrary to the *McCord* decision.

Finally, Ms. Serles argues that both the insurance policy and Colorado public policy require that she, a State Farm insured, be compensated a total of $100,000 – the UIM limits – for the loss of her husband.  (Doc. # 33 at 10-12.)  Ms. Serles cites substantially identical provisions of the policy and the Colorado UIM statute, both of which discuss the effect of payments to persons other than an "insured."  (*Id.*)  However, these provisions relate to the issue of whether a vehicle is "underinsured," and provide that a vehicle meets that definition when the limits of that vehicle's insurance are "reduced by payments to persons other than an insured in the accident to less than the limits of" the insured's UIM coverage.  (Doc. # 20, Ex. A-3, at 14; C.R.S. § 10-4-609(4)).  In this case, there is no dispute that the responsible driver's vehicle is "underinsured," and thus these provisions are inapposite to the issues under consideration.  Ms. Serles makes no real argument that aggregating payments to numerous persons runs afoul of Colorado statute or policy, and cites no case that prohibits an insurer from calculating its offset using amounts paid to multiple persons, when each person meets the definition of an "insured."  Therefore, the Court cannot conclude that offsetting the amounts paid to Dustin and Ryan Serles – who are "insureds" under the State Farm policy – violates public policy.

**III.     BAD FAITH CLAIM**

State Farm also moves for summary judgment on Ms. Serles' bad faith claim. Bad faith requires that the insured prove that the insurer "acted unreasonably and with knowledge of or reckless disregard of its unreasonableness." *DeHerrera*, --- P.3d ---, 2009 WL 540789, at *6 (citations omitted). When an insurer acts in compliance with established law and the terms of its insurance policy, it cannot be said to have acted in bad faith. *See id.* Because the Court finds that State Farm's offset of the entire $20,000 was permissible under the policy, summary judgment in favor of State Farm is also proper on this bad faith claim.

## **CONCLUSION**

Considering the plain language of the relevant insurance policy, State Farm is entitled to judgment as a matter of law. The policy fairly includes Mr. Serles' children in the definition of "insured," given that they were entitled to damages from the injuries to their father by operation of New Mexico law. The policy further permits State Farm to deduct amounts paid to one or more insureds from its overall UIM liability. As such, State Farm is entitled to offset its UIM policy limit by the $20,000 paid to both Ms. Serles and Mr. Serles' children. Accordingly, it is

ORDERED that Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment (Doc. # 20) is GRANTED. This case is DISMISSED WITH PREJUDICE, each side to bear its own costs.

IT IS FURTHER ORDERED that the parties' Unopposed (Stipulated) Motion for Continuance of Trial Pending Ruling on Motion for Summary Judgment (Doc. # 63) is DENIED as MOOT.

IT IS FURTHER ORDERED that the Final Trial Preparation Conference set for July 13, 2009 and the four-day jury trial set to commence on July 27, 2009 are hereby VACATED.

DATED:  June 3, 2009

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge